**TEXAS LIQUOR CONTROL BOARD, Appellant,**

v.

**M. S. STEVENS, Appellee.**

No. 15373.

Court of Civil Appeals of Texas. Dallas.

Feb. 7, 1958.

Rehearing Denied March 7, 1958.

Will Wilson, Atty. Gen., and John H. Minton, Jr., Asst. Atty. Gen., for appellant.

A. J. Piranio and P. P. Ballowe, Dallas, for appellee.

CRAMER, Justice.

Stevens originally filed application for an on the premise (2005 South Ervay Street, Dallas) retail wine and beer license to the County Court and after the County Judge refused the application Stevens in due time duly appealed such order to the District Court. The District Court, after hearing, entered final judgment setting aside the County Court order and directed appellant Board to issue the on the premise retail wine and beer license applied for by Stevens. The District Court found as a basis for his order, in substance, (a) there was no substantial evidence presented to the County Judge upon which to base his order, (b) the County Judge acted arbitrarily, unjustly, capriciously and illegally in making his order refusing the license sought, and (c) substantial evidence was not produced in the District Court to substantiate said order therein, and entered an order granting the license.

Appellant briefs three points, in substance error in each of the three rulings in that each of the three findings was supported by substantial evidence, countered that each issue was not so supported. Points and counterpoints were all briefed together.

Our statute, Art. 667, secs. 5 and 6, Penal Code, in substance, material here, provides for the filing of an application with the County Judge for a license as a retail dealer of beer and that such judge shall refuse to approve the application for such license if he has reasonable grounds to believe, and finds, any of the following to be true: If the distributor or dealer and the place or manner in which the applicant may conduct his business is of such a nature, based on the general welfare, health, peace, mor-

als and safety of the people, and on the public sense of decency, warrants a refusal of the license, or applicant is not of good moral character and his reputation for being a peaceful law abiding citizen in the county where he resides is bad. Sec. 6(d) at the time involved here provided in substance that if, upon hearing, the County Judge finds any facts stated in the petition to be untrue, the application shall be denied; he may also refuse if he has reason to believe applicant will conduct his business contrary to law or in any manner contrary, or which may result in jeopardy to the peace, morals, health or safety to the general public; that it shall be sufficient legal reason to deny such license if the place, building or premises to be used has theretofore been used for selling alcoholic beverages in violation of law within six months immediately preceding the date of the application, or has during that time been operated, used or frequented in any manner or for any purpose contrary to the Act or for any purpose or in any manner that is lewd, immoral or offensive to public decency, and provides that the Judge shall give due consideration to any recommendation made by certain public officers.

Under the authorities the County Judge is allowed much latitude in passing on the question as to what would jeopardize the peace, morals and safety of the community. Ex parte Velasco, Tex.Civ.App., 225 S.W. 2d 921; Ramos v. Austin, Tex.Civ.App., 220 S.W.2d 528.

Stevens himself testified, in substance, before the County Judge as follows: That he was represented by his own attorney before the County Judge; that he had approximately 147 arrests out there in 1956; about 132 were by his own officers who held them for the city police to come for them; that he had one suspension in 1956 and another five years and three days before that; he had none in 1957; of the 132 arrests by his special officers during the last year of his license, some of them were for affrays, disturbing the peace, and some because the police wanted them; that he was

there at all such times; the building in which he conducts his business is brick; has a fifty-ton air conditioner therein; contains some 10,000 square feet and his business occupies the entire building; that in the same block with him there is a beer joint on each side, a drug store, a tailor shop, a variety shop, doughnut shop, electric shop, a printing shop behind him, and a building on each corner; that across the street from him there are businesses of the same character with apartments upstairs; that the front houses were for whites, the rear for colored. The special officers are given instructions by the dance hall supervisor; he gives them no particular instructions; he is also on the floor personally at all times on the big nights,—Thursday, Friday and Saturday; that the other clubs in the neighborhood halls are about the same as his, have the same customers; they go from one club to the other. The reason for his having more arrests, he thinks, is because he runs more hours and more days than most clubs; that he has had more recording stars than any club in the Southwest, had Elvis Presley out there twice; has had big bands with top records and all top recording stars, and naturally he gets more people than the majority of clubs; that he always works two bands instead of one; he runs six hours and the others run about four. The type of arrests not made by his officers, some of them might have been for something that occurred in his place of business before his policeman got there; he didn't remember. He did not believe he ever saw them take one out for disturbing the peace or appearing intoxicated to him; further, that if they got into a fight there would be police there; if a fight started naturally they would go back there; that a majority of the arrests were made by his special officers. The police had picked up a few girls; we never let them back if we found out what they were. "I think they took a girl or two that had been working, at least they said they had been. I don't know how many there were; we never did let them back." Of the fifteen arrests by the Dallas Police

Department, about three or four were girls; as far as he knew none were working their trade at his place. His last suspension grew out of a little argument back in the rest room. He kept a shine boy and a maid back there and a porter. The squad went back there and found somebody had a bottle in their pocket and they were arguing, that is what they said. There was no intoxicated person on the premises, they were just arguing there, as far as he knew; it was after 12:00 o'clock; and as follows: "Q. And if what the District Attorney seems to be saying here, that suspension was because of an intoxicated person was on the premises, evidently,—now, did you see that intoxicated person? A. Well, I seen them walk out with him. Q. Did you see him? A. Mr. Everett, I believe, was the one that made the arrest. Q. Who is Mr. Everett? A. He was a regular squad man." Stevens stated that if he had known the man was intoxicated and in the rest room he would not have let him stay there; that he knew the city ordinance provided that if he or his special officer made the arrest it was not counted against him; that was the reason he and his officer made so many arrests which numbered slightly less than 1% of the people there.

The Police reports of the 149 arrests at Stevens' place were introduced in evidence. There was also introduced, on the reputation of Stevens, that the Police Department records show Stevens had been arrested in 1929 for three cases of armed robbery; in 1946 for being drunk in a car; in 1948 for disturbing the peace; in 1949 for permitting gambling devices on the premises; in 1951 for violation of Article 630, Penal Code, and in 1955 for disturbing the peace.

Under the record there was substantial evidence to support the Board's order, and the District Court erred in holding there was no such evidence here.

Appellant's points are sustained and the judgment of the District Court is reversed and here rendered that the order of the County Judge be in all things approved, with directions to the District Judge to enter judgment in conformity with the above holdings. Texas Liquor Control Board v. Metcalfe, Tex.Civ.App., 256 S.W.2d 117; Jennings v. Texas Liquor Control Board, Tex.Civ.App., 300 S.W.2d 372.